```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------X
GERALD ROBERTS, STEPHEN JOHNSON,
CHRISTOPHER MCLEOD, DAVID SHAW,
ANITA JOHNSON, CHRISTOPHER
HUMPHRIES, JEFFREY WILKINS, LATANYA
MARTIN-RICE, LAURA SANCHEZ, LUCY
MUNOZ, NATALIO HERRERA, RADIKA
KANHAI, ROGER SIERRA, YOO SUNG KIM,         MEMORANDUM & ORDER
CHRISTINA LAMBRU, IRENE TSOROROS,
MARIA DIAZ, CYNTHIA DURAN, JASPER           14-CV-257 (KAM)(VMS)
JONES, ALLEN CHERFILS, LISA
LUNDSREN, TERESA AREVALO, SYED A.
HAQUE, AHMED TALHA, OLIE AHMED,
JAMAL AHMED, SORWAR HUSSAIN, LUZ
OSPINA, JOHNNY MURILLO, THOMAS
DORGAN, SENECA SCOTT, ERIC LEE,
WILLIAM BOONE, MARLENNI MINAYA,
ISABEL PENA, CELESTE BROWN-POLITE,
DWIGHT CURRY, RAWLO BENFIELD, JOSEPH
BROWN, SANDRA MILENA- MARTINEZ,
MARINO CANO, ABIGAIL APPIAH-
OTCHERE, DALIA TOPPIN, ANA MOREIRA,
BETSABE TORRES, LORNA BENT, OSMOND
WALKER, CONRAD HALL, VISHWANI
SUKHRAM, ANNE GRONATA, BRUCE SMITH,
NESTOR AMAYA, GUIDO ANTONIO
RODRIGUEZ, WILLIE BALLENTINE, PETER
VONTAS, FELIX GONZALEZ, MICHELLE
LATIMER, VARISE WALLER, SOOKIA
FREEMAN, CAMARCA FLOWERS, ANTONIO
SALCEDO, JOEVEN CORTEZ, AND JUDITH
ALLEN, on behalf of themselves and
others similarly situated,

                    Plaintiffs,

     - against -

GENTING NEW YORK LLC, D/B/A RESORTS
WORLD CASINO NEW YORK CITY,

                    Defendant.
-----------------------------------X
```

**KIYO A. MATSUMOTO, United States District Judge:**

On January 14, 2014, Plaintiffs Gerald Roberts, Stephen Johnson, Christopher McLeod, and David Shaw, on behalf of themselves and all others similarly situated, commenced this action against Defendant Genting New York LLC, d/b/a Resorts World Casino New York City ("Defendant" or "Resorts World"), alleging violations of the Worker Adjustment and Retraining Notification Act ("Federal WARN Act"), 29 U.S.C. §§ 2101, et seq., and New York Labor Law ("NYLL") §§ 860, et seq. ("N.Y. WARN Act"). (ECF No. 1, Compl., at ¶ 1.)  On March 17, 2014, Plaintiffs filed an Amended Complaint, adding 59 new plaintiffs (together, the "Plaintiffs"). (ECF No. 5, First Amended Complaint ("FAC").)

Following discovery, the parties filed cross-motions for summary judgment, which were fully briefed on February 16, 2016. (ECF Nos. 53, 61.)  The case was subsequently reassigned from Judge Sandra L. Townes to Judge I. Leo Glasser, and Judge Glasser entered a Memorandum and Order on March 12, 2021, denying Plaintiffs' motion for summary judgment and granting Defendant's motion for summary judgment.  *Roberts v. Genting New York LLC*, No. 14-CV-257 (ILG)(VMS), 2021 WL 950055, at *1 (E.D.N.Y. Mar. 12, 2021). Plaintiffs appealed the denial of their motion for summary judgment and the grant of summary judgment to Defendant.  (ECF No. 78, Notice of Appeal.)

On May 15, 2023, the Second Circuit Court of Appeals affirmed the denial of Plaintiffs' motion for summary judgment, vacated the grant of summary judgment to Defendant, and remanded the case for further proceedings. *Roberts v. Genting New York LLC*, 68 F.4th 81, 96 (2d Cir. 2023). Judge Glasser subsequently held a status conference with the parties on June 8, 2023, (ECF No. 81), before the case was reassigned to the undersigned on June 13, 2023.

Following reassignment, the Court directed the parties to meet and confer and advise the Court as to how they wish to proceed. (Docket Order dated June 14, 2023.) The parties submitted a joint letter on June 16, 2023, setting forth their respective positions. (ECF No. 82, Joint Letter.) Plaintiffs argued that no further briefing was necessary regarding arguments made by Defendant in its motion for summary judgment that were not reached by Judge Glasser's order. (*Id.*) Plaintiffs also argued that the Defendant's motion to strike the jury demand, which the Second Circuit left "to the district court to resolve in the first instance on remand, after giving the parties an opportunity to be heard," *Roberts*, 68 F.4th at 92 n.11, should be considered concurrently with a future motion for class certification. (ECF No. 82, at 1-2.) Defendant requested that the Court consider its "fully briefed" remaining arguments in support of summary judgment--which were not reached by Judge Glasser--prior to proceeding to class certification to "either obviate the need for

3

such motions or limit the scope of any class certification motion." (*Id.* at 2.)

Both parties agree that the remaining arguments in the Defendant's motion for summary judgment are fully briefed. Although Plaintiffs argue that no decision is necessary prior to the filing of a motion for class certification, the Court agrees with Defendant that it is prudent to resolve the remaining arguments in the Defendant's summary judgment motion which were not considered by Judge Glasser prior to moving forward with class certification. For the reasons that follow, the Court respectfully **denies** the remaining portions of Defendant's motion for summary judgment not reached by Judge Glasser, directs the parties to confer and discuss the scheduling of a settlement conference, and directs the parties to file pre-motion conference letters in anticipation of their cross motions regarding class certification and Plaintiffs' jury demand.

## BACKGROUND

The Court assumes the parties' familiarity with the underlying facts as discussed in Judge Glasser's prior Memorandum and Order in this case, *see Roberts*, 2021 WL 950055, at *1-3, along with the Second Circuit's Opinion, *Roberts*, 68 F.4th at 84-87, and will discuss only those facts relevant to the Defendant's remaining summary judgment arguments currently before this Court.

**I.   Factual Background**

Defendant Resorts World operates a casino in Queens, New York that offers thousands of games and a variety of food and beverage options. (ECF No. 65, Defendant's Rule 56.1 Statement of Undisputed Material Facts ("Def't 56.1"), at ¶¶ 1, 3.) In or around July 2010, prior to the opening of the casino in 2011, the New York Hotel and Motel Trades Council, AFL-CIO (the "Union") began to organize Resorts World's future non-management employees. (*Id.* at ¶ 7.) Following an October 2013 resolution by an arbitrator of certain unsettled terms in the Union's Collective Bargaining Agreement ("CBA"), employee wages for Union members were "nearly doubled," and Resorts World attempted to mitigate the financial impact of the increased wages by reducing the workforce. (*Id.* at ¶¶ 9-12.) Relevant to the instant case, on January 6, 2014, Resorts World closed the Aqueduct Buffet—one of the food outlets at the casino—and terminated approximately 177 employees, including cooks, food servers, food runners, bussers, hosts, cashiers, warehouse attendants, and stewards. (*Id.* at ¶¶ 15, 18.)

Resorts World contends that the layoffs were the product of "intense" negotiations between November 2013 and the first week of January 2014 with the Union which "took place virtually daily," and that the negotiations resulted in the layoffs being decreased from "over 300 to approximately 177." (*Id.* at ¶¶ 14-15.) Resorts World contends that these negotiations continued through the first

5

week of January 2014 and that "the Union approved of the closing of the Aqueduct Buffet" along with the "list of employees to be laid off" and the "timing of the layoffs." (*Id.* at ¶ 16.) Plaintiffs dispute this characterization of the negotiations and argue that the emails cited by Defendant in support of its Rule 56.1 Statement "indicate that the layoffs were more of a decree by Defendant which the Union had no choice but to agree with in significant portion." (ECF No. 68, Plaintiffs' Response to Defendant's Rule 56.1 Statement ("Pl. Resp. 56.1"), at ¶ 15.) Plaintiffs also dispute that the Union "approved" of any action, and instead argue that the Union was "attempting to minimize the damage from Defendant's decision to terminate employees." (*Id.* at ¶ 16.)

Resorts World further contends that approximately twenty employees received "Enhanced Severance" in exchange for a release of any claims against Resorts World, in addition to the "Regular Severance" required pursuant to the CBA. (Def't 56.1 at ¶ 20.) Plaintiffs dispute that the exchange included a general waiver, and "challenge whether the waiver had sufficient consideration and was otherwise fair." (Pl. Resp. 56.1 at ¶ 20.) In support of its contentions Defendant offers as evidence an example of the voluntary agreement and general release signed by a non-party to this action, (ECF No. 63-11, at 9-11), but does not identify in

6

its Rule 56.1 statement which, if any, of the Plaintiffs received Enhanced Severance, (Def't 56.1 at ¶ 20).

## LEGAL STANDARD

Summary judgment shall be granted to a movant who demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' for these purposes when it 'might affect the outcome of the suit under the governing law.'" *Rojas v. Roman Catholic Diocese of Rochester*, 660 F.3d 98, 104 (2d Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). No genuine issue of material fact exists "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. at 249. "If the [non-moving party's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (citations omitted).

When bringing a motion for summary judgment, the movant carries the burden of demonstrating the absence of any disputed issues of material fact and entitlement to judgment as a matter of law. *Rojas*, 660 F.3d at 104. In deciding a summary judgment motion, the court "must resolve all ambiguities and draw all reasonable inferences against the moving party." *Flanigan v. Gen. Elec. Co.*, 242 F.3d 78, 83 (2d Cir. 2001) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

7

A moving party may indicate the absence of a factual dispute by "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). Once the moving party has met its burden, the nonmoving party "must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)). Finally, the "mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

## **DISCUSSION**

Judge Glasser originally denied Plaintiffs' motion for summary judgment, and granted summary judgment to the Defendant in this case based on a finding that Aqueduct Buffet was not an "operating unit" under the Federal WARN Act and the N.Y. WARN Act. *Roberts*, 2021 WL 950055, at *4. Based on this finding, Judge Glasser concluded as a matter of law that Defendant was not subject to the advance notice provisions of the Federal and N.Y. Acts. *Id.* Judge Glasser did not reach Defendant's alternate arguments regarding estoppel or waiver. *Id.* n.3. In the Second Circuit's opinion affirming the denial of Plaintiffs' motion for summary

8

judgment, vacating the grant of summary judgment to Defendant, and remanding this case for further consideration, the Second Circuit held that "a reasonable fact-finder could determine that the [Aqueduct] Buffet was an operating unit," thus precluding summary judgment in favor of either party on the "operating unit" issue. *Roberts*, 68 F.4th at 92-93.

Upon remand, the Court now considers Defendant's remaining arguments that were not previously considered by Judge Glasser. Defendant argues (1) that Plaintiffs' claims are barred by the doctrines of waiver and/or estoppel based on the Union's participation in the layoff process; and (2) the Plaintiffs who received Enhanced Severance waived and/or released any claims against Resorts World. (*See generally* ECF No. 64, Defendant's Memorandum of Law ("Def't Mem.").) The Court will briefly set forth the legal standard for claims under the Federal and N.Y. WARN Acts before examining each of Defendant's two remaining arguments in turn, along with Defendant's pending request to strike Plaintiffs' punitive damages demand.

I. Applicable Law

A. Federal WARN Act

The WARN Act "requires employers to give employees 60 calendar days' notice in advance of plant closings and mass layoffs." *Guippone v. BH S & B Holdings LLC*, 737 F.3d 221, 225 (2d Cir. 2013) (citing 29 U.S.C. § 2102(a)(1)). The requirement generally applies

9

to employers who employ 100 or more full-time employees. *Coppola v. Bear Stearns & Co.*, 499 F.3d 144, 148 (2d Cir. 2007) (citing 29 U.S.C. § 2101(a)(1)). A "plant closing" is defined as "the permanent or temporary shutdown of a single site of employment, or one or more facilities or operating units within a single site of employment." 29 U.S.C. § 2101(a)(2). Accordingly, an employer who shuts down a "single site of employment" or an "operating unit," must give notice to all employees who would reasonably be expected to lose their jobs as a result, whether they work inside or outside the site or operating unit. See *id.* §§ 2102(a)(1), 2101(a)(5).

"Unless an exception applies, a covered employer violates the WARN Act when it orders a plant closing or mass layoff without providing each employee, either individually or through her or his representatives, with sixty-days advance notice." *Roberts*, 68 F.4th at 89 (internal quotation marks and citation omitted). The employer is liable to each affected employee for that employee's compensation for each day the required notice was not provided, "up to 60 days of pay and benefits." *Guippone*, 737 F.3d at 225 (citing 29 U.S.C. § 2104(a)(1)). A civil action for damages under the WARN Act is "the exclusive remedy for any violation of this chapter." *Loc. 217, Hotel & Rest. Emps. Union v. MHM, Inc.*, 976 F.2d 805, 808 (2d Cir. 1992) (brackets omitted) (quoting 29 U.S.C. § 2104(b)).

10

B.  **New York WARN Act**

"Like the federal statute, the New York WARN Act requires that qualified employers give employees advance notice of a plant closing or mass layoff." *Roberts*, 68 F.4th at 92 (citing NYLL § 860-b); *see also id.* § 860-b(2) ("An employer required to give notice . . . under this article shall include in its notice the elements required by the federal Worker Adjustment and Retraining Notification Act (29 U.S.C. 2101 et seq.)."). "Under the N.Y. WARN Act, notice must be given ninety, rather than sixty, days in advance." *Id.* (citing NYLL § 860-b). "The N.Y. WARN Act applies to employers who 'employ [50] or more' full-time employees, rather than 100." *Id.* (quoting NYLL § 860-a(3)). Moreover, the New York statute provides lower thresholds for a "plant closing" or a "mass layoff" to trigger the requirement of advance notice. *Compare* NYLL §§ 860-a(4), (6) *with* 29 U.S.C. §§ 2101(a)(2), (3). "Accordingly, where there is liability under the WARN Act, there is necessarily liability under the New York WARN Act." *Roberts*, 68 F.4th at 92

II. **Plaintiffs' Claims Are Not Barred by the Doctrine of Waiver or Estoppel**

Defendant argues that Plaintiffs' WARN Act claims "are barred by the Union's knowledge of, active participation in, and approval of the closure of the Aqueduct Buffet," citing a number of emails between the Union and Resorts World executives as evidence. (Def't

11

Mem. at 20-21.)  Defendant also argues that "the Union had notice and actual knowledge of" the layoffs prior to January 6, 2014, fulfilling Resorts World's WARN Act obligation.  (*Id.* at 21.)  In opposition, Plaintiffs argue in response that "the information necessary to be provided under the WARN Act was not provided prior to the actual layoff" and dispute that the Union "approved" the layoffs.  (ECF No. 67, Plaintiffs' Memorandum of Law in Opposition ("Pl. Mem."), at 11.)  Plaintiffs further argue that there is no evidence that there was any intentional waiver of the rights of any members of the Union under either the Federal or N.Y. WARN Act.  (*Id.* at 11-12.)  Construing the facts in the light most favorable to the non-moving party, the Court finds no basis for concluding that Plaintiffs' claims are barred by the doctrine of waiver or estoppel.

Waiver is defined as "the intentional relinquishment of a known right." *United States v. RePass*, 688 F.2d 154, 158 (2d Cir. 1982); *see also Jordan v. Can You Imagine, Inc.*, 485 F. Supp. 2d 493, 499 (S.D.N.Y. 2007) ("Waiver requires the voluntary and intentional abandonment of a known right which, but for the waiver, would have been enforceable. Waiver may be established by affirmative conduct or by a failure to act that evinces the intent to abandon the right." (citations omitted)).  Equitable estoppel applies when a party, by its conduct, including language, acts or silence, knowingly makes a representation or conceals material

12

facts which it intends or expects will be acted upon by the other party. *United States v. Wynshaw*, 697 F.2d 85, 87 (2d Cir. 1983); *see also ATC Petroleum, Inc. v. Sanders*, 860 F.2d 1104, 1111 (D.C. Cir. 1988) (Equitable estoppel "is a means of precluding a litigant from asserting an otherwise available claim or defense against a party who has detrimentally relied on that litigant's conduct.").

*First,* the Court can easily dispense with any argument that notice of layoffs to the Union fulfilled Resorts World's obligations under the Federal and N.Y. WARN Act. Defendant concedes in its own memorandum of law that the list of employees to be laid off was still being negotiated in the week preceding the layoffs. (Def't Mem. at 21.) Because the scope of the layoffs had not been finalized until days before the layoffs took place, it was impossible for any "notice" given to the Union to satisfy the 60-day or 90-day requirement of the Federal and N.Y. WARN Act.[1] Thus, the instant case is easily distinguishable from *Presser v. Key Food Stores Co-op., Inc.*, No. 01-CV-8059, 2006 WL 2086346, at *2 (E.D.N.Y. July 25, 2006), *aff'd*, 316 F. App'x 9 (2d Cir. 2009), in which WARN Act notices were *explicitly* sent by the employer to collective bargaining representatives for unionized employees.

---

[1] There is also no evidence in the record to suggest that Defendant, in an abundance of caution, notified all employees who *might* be affected by the layoffs prior to November 7, 2013. Defendant includes as evidence an email with an attached "action plan" dated November 20, 2013, but that is the earliest correspondence proffered. (ECF No. 63-7, at 2.)

13

*Second,* the Court's review of the email exchanges between Union leadership and Resorts World executives reveals nothing that could be construed as a waiver, express or implied, of the Union members' rights under either WARN Act. Resorts World executives worked with Union leadership to (1) draft a "Frequently Asked Questions" guide for terminated employees, (ECF 63-7 at 80-86); (2) negotiate final severance pay, (ECF 63-7, at 87); and (3) reduce and manage the number of employees impacted (ECF 63-7, at 2-9, 25-31). It is clear from the evidence proffered by Defendant that the Union was aware of the impending layoffs and worked constructively with the Resorts World executives to mitigate the impact on Union members. Glaringly absent from the correspondence, however, is *any* mention of the WARN Act, or any waiver by the Union of employees' notification rights under Federal and New York law.

Defendant offers no authority to suggest that a Union's participation in discussions regarding future layoffs waives any individual member's ability to bring a Federal or N.Y. WARN Act claim. To the extent the Resorts World executives were attempting to "avoid any disputes concerning the layoffs" by collaborating with the Union, (Def't Mem. at 21), they failed to make that intent clear in their communications. The Court will not infer that the Union shared in the Defendant's intent to avoid disputes based on the evidence presented by Defendant, and thus does not find any waiver to be present.

14

*Third,* the Court denies Defendant's estoppel defense for the same reasons as set forth above. The evidence proffered by Defendant does not show any "lack of knowledge of the true facts" by the Defendant, or Defendant's "reliance upon the conduct" of the Union that led to a "prejudicial change in position" on Resorts World's part. *Coggins v. County of Nassau*, 615 F. Supp. 2d 11, 22 (E.D.N.Y. 2009). The Court's review of the correspondence reveals no representation that the Union was waiving WARN Act claims on behalf of its members, let alone a "false representation or concealment of material facts." *Id.* To the extent Defendant believes that the Union should have warned the Resorts World executives that their layoff plan might violate federal and state notice requirements, the Court finds no authority supporting a finding of any such obligation on behalf of the Union.

Accordingly, Defendant's motion for summary judgment based on the doctrine of waiver or estoppel is denied.

**III. Defendant Fails to Offer Sufficient Evidence of Enhanced Severance Waiver by Named Plaintiffs**

Defendant argues that six of the named Plaintiffs in the instant case received Enhanced Severance[2] in exchange for releasing Resorts World from "any and all charges, claims and actions arising out of [their] employment or the separation of [their] employment

---

[2] Enhanced Severance amounted to "5 days' pay for individuals employed with Resorts World for two years or less and 10 days' pay for individuals employed with Resorts World for two years or more." (Def't Mem. at 22 n.16.)

15

with [Resorts World]." (Def't Mem. at 22-23.) Plaintiffs argue that Defendant is not entitled to summary judgment because they failed to produce any of the waivers for the Plaintiffs in this action, and instead rely on a sample executed with a non-party. (Pl. Mem. at 12.) Plaintiffs further argue that even if the individual plaintiffs' waivers had been produced, Defendant would not be entitled to judgment as a matter of law, because it has not shown that the waivers would be effective or bind the Plaintiffs. (*Id.* at 12-13.) Plaintiffs close their argument by contending that even if a waiver in the release were binding, the waiver should be unenforceable on ground of public policy. (*Id.* at 13-14.)

The Court analyzes waiver under New York state law, given any waiver was unquestionably made in New York, and the Plaintiffs are citizens of New York. *NYTDA, Inc. v. City of New York*, No. 11-CV-1836 (NGG)(RER), 2014 WL 4274219, at *6 (E.D.N.Y. Aug. 28, 2014). "Waiver is an intentional relinquishment of a known right and should not be lightly presumed." *Gilbert Frank Corp. v. Fed. Ins. Co.*, 520 N.E.2d 512, 514 (N.Y. 1988). If a party clearly waives its right to pursue a cause of action, that waiver will be binding in future actions absent exceptional circumstances. *See Middle East Banking v. State Street Bank Int'l*, 821 F.2d 897, 906 (2d Cir. 1987) (upholding validity of release despite claim of unilateral mistake). However, the New York courts have noted that

16

"the meaning and coverage of a release depends on the controversy being settled . . . [and] a 'release may not be read to cover matters which the parties did not desire or intend to dispose of.'" *Gettner v. Getty Oil Co.*, 641 N.Y.S.2d 73, 74 (2d Dep't 1996) (citations omitted).  "[T]he intent to waive a right must be unmistakably manifested, and is not to be inferred from a doubtful or equivocal act." *Navillus Tile, Inc. v. Turner Const. Co.*, 770 N.Y.S.2d 3, 5 (1st Dep't 2003) (internal quotation marks and citation omitted).  "The burden of proving waiver rests with the party asserting it." *Homapour v. Harounian*, 160 N.Y.S.3d 223, 225 (1st Dep't 2021) (citation omitted).

The Court finds that granting summary judgment to Defendant against six of the named Plaintiffs who purportedly entered into an Enhanced Severance agreement would be inappropriate based on the current record.  Plaintiffs do not deny that a subset of six named Plaintiffs entered into a release of some kind in exchange for severance payments above and beyond those required under the CBA.  (Pl. Resp 56.1 at ¶ 20.)  Notwithstanding that admission, Defendant has offered no evidence showing the *specific* language included in the releases entered into with the named Plaintiffs.  Defendant offers only a single example of a release with a non-party, (ECF No. 63-11 at 9-11), and seemingly asks the Court to infer that the named Plaintiffs entered into identical releases with only the names and payment amounts being changed.  Defendant

17

offers no explanation for its failure to proffer the actual signed releases with the named Plaintiffs in the instant action. In the absence of the actual waivers at issue, the Court will not infer the scope of the release included.

Regarding the Defendant's argument in the alternative that its liability should be reduced because the payment of Enhanced Severance constitutes a "voluntary and unconditional payment" under 29 U.S.C. § 2104(a)(2), the Court is similarly not persuaded. Given Defendant explicitly argues that the payment was made *in exchange* for a general release, the Court cannot find that the payment was "unconditional," as required by the Federal WARN Act. *See, e.g., Loc. Joint Exec. Bd. of Culinary/Bartender Tr. Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1160 (9th Cir. 2001) (finding severance payment made conditional on remaining on the job until the hotel casino closed was not entitled to any deduction from WARN Act liability).

**IV. Availability of Punitive Damages**

Defendant also seeks to strike Plaintiffs' request for punitive damages, arguing that punitive damages are not available under the Federal WARN Act or the N.Y. WARN Act. (Def't Mem. at 24.) Plaintiffs concede that punitive damages are not available under the Federal WARN Act but argues that "no court has held that punitive damages are not available under the NY WARN Act." (Pl. Mem. at 14.) Punitive damages are available under New York law

18

"to punish a person for outrageous conduct which is malicious, wanton, reckless, or in willful disregard for another's rights." *DiBella v. Hopkins*, 403 F.3d 102, 122 (2d Cir. 2005) (internal quotation marks and citation omitted); *see also Lovebright Diamond Co. v. Spragins*, 574 F. Supp. 76, 80 (S.D.N.Y. 1983) ("In order to state a claim for which punitive damages may be awarded, wanton behavior or conduct evidencing a criminal disregard for civil liability on the defendant's part must be pleaded."). Defendant argues for the first time in its reply that the legislative history of the N.Y. WARN Act supports a conclusion that punitive damages are not available. (ECF No. 71, Defendant's Reply Memorandum of Law at 9-10.)

The Court concurs with the parties that punitive damages are not available under the Federal WARN Act, *Finnan v. L.F. Rothschild & Co.*, 726 F. Supp. 460, 464-65 (S.D.N.Y. 1989), but denies Defendant's request to strike Plaintiffs' demand for punitive damages under the N.Y. WARN Act without prejudice to the request being renewed prior to trial, given Defendant's arguments regarding the unavailability of punitive damages under New York law were made for the first time in its reply, *Knipe v. Skinner*, 999 F.2d 708, 711 (2d Cir. 1993) ("[a]rguments may not be made for the first time in a reply brief").

19

**CONCLUSION**

For the reasons stated above, Defendant's remaining arguments in its Motion for Summary Judgment that were not ruled on by Judge Glasser are respectfully denied.

The parties shall confer and submit a request for a settlement conference before Magistrate Judge Scanlon. The parties' joint request to Magistrate Judge Scanlon shall be submitted no later than July 31, 2024. Plaintiffs shall file their request for a pre-motion conference in anticipation of a motion for class certification no later than July 31, 2024, and Defendant shall file a request for a pre-motion conference for its anticipated motion to strike Plaintiffs' jury demand by the same date. Any opposition by either party is due no later than August 7, 2024.

**SO ORDERED.**

Dated:   July 17, 2024
         Brooklyn, New York
_____
KIYO A. MATSUMOTO
United States District Judge
Eastern District of New York